IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENYANTA BECK,<br><br>　　　　Plaintiff,<br><br>v.<br><br>W. RASH, C/O SCHOENBECK, ANTHONY JONES, RYAN NOTHNAGLE, JOHN/JANE DOE #1, JOHN/JANE DOE #2, ILLINOIS DEPARTMENT OF CORRECTIONS, LEAH STRONG, JOHN/JANE DOE #3, and MENARD CORRECTIONAL CENTER,<br><br>　　　　Defendants. | Case No. 24-cv-1933-NJR |

## MEMORANDUM AND ORDER

**ROSENTENGEL, Chief Judge:**

Plaintiff Kenyanta Beck, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. In the Complaint (Doc. 1), Beck alleges that the defendants retaliated against him and interfered with his mail and access to the courts.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

From August through October 2023, Beck's family members sent him "legal documents" through the United States mail (Doc. 1, p. 11). Menard Correctional Center mailroom staff returned those documents, however, and stopped all legal documents from reaching Beck (*Id*.). Beck also failed to receive any notice from mailroom staff informing him of the denial and return of his documents. Beck indicates that the documents included affidavits that he planned to use to collaterally attack his criminal conviction (*Id*.). Beck identifies the mailroom staff member involved as John Doe #1 (*Id*.). Beck informed the mailroom of the issue, and on August 26, 2023, he also submitted a grievance (*Id*.). After submitting a grievance, Beck directed his family to resend the affidavits (*Id*. at p. 12). But mailroom staff again refused to allow the documents into the prison and sent them back to Beck's family (*Id*.).

On September 7, 2023, Beck attempted to file a complaint against mailroom staff at Menard. He alleges that he made a 3-way call on the prison phones in an effort to file his complaint (*Id*.). Officer Rash then placed Beck in segregation on investigative status for the 3-way phone call. Beck alleges Rash's action was in retaliation for Beck's attempt to file a complaint against the mailroom. Beck also maintains that the phone call did not amount to a major infraction and thus he did not qualify for segregation status (*Id*.). Beck alleges that his placement on investigative status was improper because Rash saw Beck

make the phone call. Beck argues that there was nothing for the prison to investigate regarding his conduct.

Beck remained on investigative status for 29 days and spent a total of 35 days in segregation (*Id.*). On October 5, 2023, Beck received a major infraction ticket for the 3-way call (*Id.*). On October 11, 2023, Beck went before the adjustment committee consisting of Joshua Schoenbeck and Anthony Jones (*Id.* at p. 13). Although Beck argued that his phone call was not an offense eligible for segregation, Schoenbeck and Jones found Beck guilty and sentenced him to 30 days of C Grade and 30 days of B Grade (*Id.*). Beck contends that the punishment was intended to deter him from complaining about mailroom staff (*Id.*). Beck alleges that he spent a total of 35 days in segregation and lost privileges including his inmate job. Beck's job granted him daily access to the telephone, showers, six hours of out-of-cell time, and access to the commissary (*Id.*). He lost all of these privileges when he lost his job (*Id.*). Beck lost weight, experienced sleep deprivation, and the segregation stint negatively impacted his mental health (*Id.*). He sought care for his mental health from John Doe #3 mental health professional but was denied care (*Id.*). He was denied access to his legal box and mail by John Doe #2 segregation property officer (*Id.*). Being placed in segregation made it difficult to submit legal filings and delayed the preparation of his collateral attack on his conviction (*Id.* at pp. 13-14). Beck believes that the defendants' actions were an attempt to stop him from pursuing a remedy against mail staff.

Beck alleges that he informed the adjustment committee of C/O Rash's actions. He also informed the mailroom staff, Counselor Leah Strong, Ryan Nothnagle, and

3

Latoya Hughes of the adjustment committee's actions through the grievance process (*Id.* at p. 14). Beck alleges that if officials would have acted on his complaints, he could have avoided segregation time (*Id.*).

## Preliminary Dismissals

Although Beck refers to Latoya Hughes in the body of his Complaint, he fails to include her as a defendant in the case caption. *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be considered a party, a defendant must be "specif[ied]…in the caption"). Thus, any claim against Latoya Hughes is **DISMISSED without prejudice**. Further, Beck cannot maintain a claim against the State of Illinois,[1] IDOC, or Menard Correctional Center because they are not "persons" amendable to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983"). Any claim against the State of Illinois, IDOC, or Menard Correctional Center is **DISMISSED with prejudice**.

Further, Beck alleges that Ryan Nothnagle, Latoya Hughes, and Leah Strong were liable for his claims because they read his grievances but failed to remedy the issues. But their simple denial or mishandling of a grievance fails to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3f 763, 772 n.3 (7th Cir. 2008). Thus, any claim against Nothnagle and Strong is also **DISMISSED without prejudice**.

---

[1] Beck also fails to identify the State of Illinois in the caption of the case.

Beck also fails to state a claim under the Eighth Amendment for the denial of mental health care. Although he alleges that he sought care from a "mental health worker," whom he identifies as John Doe #3 in the case caption, Beck fails to provide any factual allegations regarding his interaction with John Doe #3. He merely alleges that he was denied adequate mental health care after speaking to a mental health worker. But he fails to indicate when he spoke to this individual, what he told the individual, his mental state at the time, and the worker's response, if any. Without more, Beck's interaction with the mental health worker fails to state a claim for deliberate indifference. Thus, Beck's claim against John Doe #3 is **DISMISSED without prejudice**.

Beck also fails to allege that any of the other named defendants were aware of his need for care and were deliberately indifferent to that need. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known"). Thus, any claim for deliberate indifference in the treatment of his mental health is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **First and/or Fourteenth Amendment access to courts claim against John Doe #1 mailroom staff member for withholding and returning Beck's legal mail.**
>
> **Count 2:** **First Amendment claim against John Doe #1 mailroom staff member for returning Beck's correspondence from his family.**

> **Count 3:** First Amendment retaliation claim against C/O Rash for placing Beck in segregation on investigative status and issuing a disciplinary ticket in retaliation for plaintiff complaining about mailroom staff's interference with his mail.
>
> **Count 4:** First Amendment retaliation claim against Joshua Schoenbeck and Anthony Jones for finding Beck guilty of the disciplinary ticket and sentencing him to C-Grade and B-Grade.
>
> **Count 5:** Fourteenth Amendment due process claim against Joshua Schoenbeck and Anthony Jones for finding Beck guilty of the disciplinary ticket and sentencing him to C-Grade and B-Grade.
>
> **Count 6:** First and/or Fourteenth Amendment access to courts claim against John Doe #2 segregation property officer for denying Beck access to his legal work.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

*Mail Claim*

In Count 1 Beck alleges that the mailroom staff at Menard improperly returned his letters from family members that contained affidavits Beck believes were relevant to a collateral attack on his conviction. Inmates have a right to send and receive mail. *Rowe v.*

---

[2] This includes any potential claim under the Fifth Amendment as Beck fails to indicate how the Fifth Amendment is implicated by his allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

6

*Shake*, 196 F.3d 778, 782 (7th Cir. 1999). An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Legal mail is mail "designated as correspondence with an attorney." *Harrison v. County of Cook, Ill.*, 364 F. App'x 250, 252 (7th Cir. 2010). But there are simply no allegations to suggest that the mail in this case was "legal mail". Beck acknowledges that the mail was sent by a family member and was not marked as "legal" or "privileged."

Further, Beck fails to allege how the lack of affidavits hindered his ability to pursue his legal challenge. He merely states the documents were needed for a collateral attack on his criminal conviction, but he fails to allege he was prevented from filing the challenge without the documents. Beck must allege that he suffered an actual injury as a result of Defendant's actions, and he fails to do so. Thus, Beck's claim that his access to the courts was impeded by the return of the affidavits is **DISMISSED without prejudice**.

But to the extent Beck alleges in Count 2 that John Doe #1 improperly returned the correspondence with his family, Beck adequately states a First Amendment violation. Inmates have a right to send and receive mail and "a continuing pattern or repeated occurrences" of improperly rejecting mail may state a First Amendment violation. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("First Amendment applies to communications between an inmate and an outsider"). Here, Beck alleges that the mailroom staff member repeatedly returned his mail from family containing affidavits without any justification or notice to Beck. At this stage, that is enough to allege a First Amendment violation. *See Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987). Thus,

7

Count 2 shall proceed against John Doe #1. To aid in identifying the John Doe mailroom staff member who rejected Beck's correspondence, the Court **ADDS** Warden Anthony Wills (in his official capacity only) for the sole purpose of responding to discovery aimed at identifying the mailroom staff member.

*Retaliation Claims*

As to the claims in Counts 3 and 4, Beck alleges that he received a disciplinary ticket and punishment in retaliation for filing grievances about mailroom staff. In order to adequately state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman*, 226 F.3d at 573. But Beck fails to allege that his grievance was a motivating factor for the actions of Rash in issuing the ticket and the adjustment committee in finding Beck guilty. Although Beck alleges that he filed a grievance on August 26, 2023 and Rash placed him in segregation on September 7, 2023, Beck fails to allege that Rash had any knowledge of his grievance at the time he sent him to segregation. Nor has he alleged that the adjustment committee was aware of his grievance at the time they found him guilty of the charge. He also acknowledges that he did attempt a 3-way call, the infraction for which he was found guilty (Doc. 1, p. 12). Thus, Beck fails to state a retaliation claim in either Counts 3 or 4.

*Due Process Claim*

Beck also fails to state a claim for the violation of his due process rights in Count 5. He only spent 35 days in segregation on investigative status and then received time on both C and B Grade. Neither of those punishments present a viable constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (an inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Thomas v. Ramos*, 130 F.3d 754, 761-62 and n. 8(7th Cir. 1997) (investigative status does not implicate a liberty interest nor is there a protected liberty interest in demotion to C-grade); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough). Thus, Beck's claim in Count 5 is **DISMISSED without prejudice**.

*Access to Legal Work*

Finally, Beck fails to state a claim in Count 6 for the denial of his access to his "legal work." Beck alleges that while in segregation he was not able to access his legal work and that lack of access drastically delayed the preparation of his legal petitions. But Beck fails to allege what "legal work" he needed access to and how his legal petition was adversely affected by the lack of access. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (The complaint "must spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions.") (internal quotation and citation omitted); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004) (articulating two-part test for access-to-courts claim: plaintiff must show that "prison officials failed to assist in the preparation

9

and filing of" legal materials and the plaintiff must show he suffered a detriment caused by the failure). There is no indication that Beck missed a deadline or was unable to pursue his collateral attack due to his lack of access during the 35 days he spent in segregation. Thus, Count 6 is also **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 2 shall proceed against John Doe #1. Counts 1 and 3-6, as well as all claims against W. Rash, Joshua Schoenbeck, Anthony Jones, John/Jane Doe #2 segregation property officer, Ryan Nothnagle, Latoya Hughes, Leah Strong, John/Jane Doe #3 mental health professional, IDOC, Menard, and the State of Illinois are **DISMISSED**. Warden Anthony Wills is added in his official capacity only for the sole purpose of identifying John Doe #1.

The Clerk of Court shall prepare for Defendant Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Because Anthony Wills is only in the case for the purpose of responding to discovery to identify the unknown mailroom staff member, he does not need to file an

Answer. Once counsel has entered his appearance for Wills, the Court will enter a scheduling order for John Doe discovery.

If judgment is rendered against Beck, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Beck is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 30, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve him with a copy of your Complaint. After service has been achieved and Defendant's counsel has entered an appearance (which could take up to 90 days), the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**